### EDMUND DWIGHT *vs.* THE BANK OF MICHIGAN &. Trustee.

The Bank of Michigan placed funds in the hands of W. & Co. in New York, for the special purpose of paying its drafts made in favor of various individuals, and not then due and payable ; and afterwards drew an order on W. & Co. in favor of D. of Springfield, for the amount of said funds, and desired D. to make arrangements with W. & Co. to provide for the payment of said drafts, so far as the funds should be sufficient therefor ; and W. & Co. placed said funds, on their books, to the credit of D., who instructed them to pay the drafts, as they should be presented, at maturity : The holders of the drafts had notice that said funds were placed at D.'s control for pay ment of their claims, and assented thereto, and D. had notice of this assent : A cred itor of the bank, residing in this State, afterwards sued the bank here, and attached said funds in D.'s hands, by the trustee process  *Held,* that the process could not be maintained against D.

THE only question in this case was, whether William Dwight of Springfield, who was summoned as trustee of the principal defendants, was chargeable on his answers. To the general interrogatory, whether he had, at the time of the service of the writ on him, any goods, effects or credits of said defendants in his hands or possession, he answered as follows :

" About the last of October 1840, I received a letter from C. C. Trowbridge, Esq. president of the Bank of Michigan, stating that certain funds which the bank had placed in the hands of John Ward & Co. for the special purpose of paying certain drafts of the bank, made to various individuals, and not then due, were exposed to be attached by brokers, &c., and proposing to transfer those funds to my credit with Ward

& Co., and desiring me to make such arrangements with Ward & Co. as to provide for the payment of said drafts, from said funds, so far as they would be sufficient to pay the same ; at the same time enclosing me an order on Ward & Co. to pay me the balance of account then to the credit of the bank on their books.   This arrangement was accordingly made prior to or by November 12th 1840.   On the above order, the funds were placed to my credit with Ward & Co., and they were instructed by me to pay such drafts of the bank as should be presented at maturity, so long as said funds were sufficient ; and on the 12th of November 1840, I wrote Mr. Trowbridge, from New York, advising him of the arrangement, and adding, ' every thing of yours is now in my hands, and what funds you have here are to my credit with Ward.   Such drafts as you may draw, or have drawn, on Ward & Co. will be paid by them, to the extent of the credit I may have with them, and no further.'   At the time said funds were thus placed to my credit, paper of the bank, not then due, was transferred to me, the avails, when collected, to be appropriated to the same objects.   These funds were placed in my hands for the specific purpose of paying particular creditors of the bank, having drafts therefor, and were so held by me.   Additions were made to the funds, from time to time, by collections, as above mentioned, and drafts paid therefrom up to May 1842, when it was ascertained that the funds and paper provided for these drafts would not, probably, be sufficient to pay more than 25 per cent. upon the amount of the drafts ; and Ward & Co. were instructed by me to pay only that amount on each, as presented.   The outstanding drafts then amounted to over $20,000, in about seventy separate drafts.   From that time to the time of the service of the writ in this case, (April 7th 1843,) 25 per cent. was accordingly paid from these funds upon a portion of the drafts ; and there remained to my credit with Ward & Co., at the time of said service, as I am advised by them, the sum of $1261·82, subject, however, to any commissions and charges due me for the whole business ; and there then remained unpaid, of said drafts, a much larger

amount ; and I believe said drafts, to a much larger sum, had been presented to Ward & Co. and protested. Prior to the time when the funds were first placed to my credit, 1840, the Bank of Michigan was much embarrassed, and had refused specie payments ; and as the bank had drafts of the State of Michigan on the United States Bank, which it was supposed would be paid at maturity, and which constituted the principal basis of the funds in the hands of Ward & Co., the bank made the arrangement with sundry creditors, as I am advised and believe, to take, for their debts, drafts by the bank upon Ward & Co. on time, maturing when it was supposed the state drafts would be paid. After November 1840, and before the service of this writ on me, the bank had utterly failed, and made an assignment, in form, to three trustees, of all their effects, for the benefit of their creditors ; and of these facts the plaintiff, who is a large stockholder in the bank, was advised before said service. He was also previously advised by me, generally, that these funds were placed in my hands, as trustee, for the payment of specific drafts of the bank."

To a subsequent interrogatory, whether he held " said funds by any other title, or for any other purpose, than what is manifested by the aforesaid letters," his answer was, that his correspondence with John Ward & Co., and his instructions to them respecting these funds, had doubtless given encouragement, if not assurances, to the holders of said drafts, that they would be paid from the funds, if adequate. He also annexed a copy of the assignment of the Bank of Michigan, (mentioned in his answer to the previous interrogatory,) made to three persons, on the 10th of January 1842, transferring to them all the property, rights, credits and demands whatsoever of the bank, (except its banking house and the land on which it stood,) in trust for the payment of all the creditors of the bank. He further stated that said assignment was made with the written consent, previously given, of himself and of the plaintiff in this action, as stockholders, and that they both had since assented to it ; that some, if not all, of the holders of said drafts, previously to the service of this writ upon

him, had received notice that said funds were placed in his hands for payment of their claims, and assented thereto ; of which notice and assent he had been advised; and that the assignees of the bank had informed him, that they, under the aforesaid assignment, claimed said funds in his hands, if they were not by law liable to the claims of said draft holders.

*R. A. Chapman*, for the plaintiff.

*H. Morris*, for the trustee.

HUBBARD, J.    We are of opinion that the funds placed in the hands of John Ward & Co. to the credit of the Michigan Bank, and afterwards, by order of the bank, transferred to the credit of William Dwight, for a special purpose, are not such goods, effects or credits of the bank, in the hands of the said Dwight, as are liable to be attached and held to respond the final judgment in this suit.

The law is very clear, that a contingent liability is not the subject of foreign attachment.    To render the party summoned accountable under this process, it must appear that he has goods or effects in his hands, belonging to the principal debtor, or that he is indebted to him in some amount capable of being ascertained, either due and not paid, or due and not yet payable.    It does not reach the case of a person who may or may not be chargeable upon the happening of some future event ; as an attorney who is employed to collect a debt, or a commission merchant, who has sold goods for his principal on commission, and whose liability, respectively, to account, depends on future collections.    This was settled by the case of *Willard* v. *Sheafe*, 4 Mass. 235, and has been confirmed by successive decisions.

In the case at bar, Ward & Co. were indebted to Dwight for account of the Michigan Bank, in moneys payable from time to time, as the same should be drawn for.    But until Dwight received or drew for the same, or changed the place of deposit of the moneys standing to his credit, so as to make himself personally liable, he was not the debtor of the bank, nor a guarantor of the solvency of Ward & Co.    His responsibility was that of an agent, and not of a debtor.

Again; these funds were set apart by the bank, for the special purpose of paying certain specific demands, and were placed under the control of Dwight, to direct their application. He agreed to have them transferred to his credit, and to apply them as directed by the bank. The creditors had notice of this appropriation, and agreed to it; and, for the purpose of paying them *pro ratâ*, drafts were made, from time to time, upon Ward & Co. as they were in funds. This we think a good assignment of the fund, by the bank, for the benefit of such creditors. It was such an appropriation that the bank could not change it without the consent of the creditors; and Dwight was bound so to order its application. *Clarke* v. *Adair*, cited in 4 T. R. 343. *Cutts* v. *Perkins*, 12 Mass. 206. *Ward* v. *Lewis*, 4 Pick. 518. *Bourne* v. *Cabot*, 3 Met. 305.

As to the assignment by the bank, for the benefit of its creditors generally, subsequently to the order in favor of Dwight, but prior to the institution of the present process, the views before taken render it unnecessary to consider how far it was binding upon creditors living in this Commonwealth, or whether the present plaintiff might not be equitably estopped from contesting its validity.

*Trustee discharged.*